IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE L. PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 07275 |
| v. | ) | |
| | ) | |
| TRANSFORMER MANUFACTURERS, INC., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In 2009, Jose Perez was injured at his job as a "hand winder" at Transformer Manufacturers, Inc. ("TMI") in Norridge, Illinois. Several months later, he was terminated. Perez now brings this action against TMI, alleging disability discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (ADA), age discrimination and retaliation under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (ADEA), and retaliatory discharge under Illinois common law. TMI has moved for summary judgment and, for the reasons set forth below, TMI's motion is granted in its entirety.

### I. BACKGROUND[1]

TMI is an Illinois corporation located at 7051 W. Wilson Avenue in Norridge, Illinois. TMI's Facts ¶ 4. The company is a manufacturer and assembler of appliance-type electrical transformers and magnetic products used by original equipment manufacturers in various

---

[1] The Court takes the following facts from the parties' statements of material facts. *See* Defendant's Local Rule 56.1(a)(3) Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment (Dkt. 33) ("TMI's Facts"); Plaintiff's Local Rule 56.1(b)(3) Response to Defendant's Statement of Material Facts in Opposition to Motion for Summary Judgment (Dkt. 39) ("Perez's 56.1 Resp."); Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Facts (Dkt. 39) ("Perez's Facts"); Defendant's Local Rule 56.1(a)(3)(B) Reply to Plaintiff's Statement of Additional Facts (Dkt. 41) (Def.'s 56.1 Resp.).

products. *Id.* ¶¶ 4, 6. TMI had 26 employees in 2009 and 2010; 10 employees worked in management, sales, or engineering, and 16 employees, Perez included, worked in production. *Id.* ¶ 5. In June of 2009, Perez was a "hand winder" for TMI. *Id.* ¶ 9. A hand winder's work is arduous. It includes winding wire from a spool that weighs between 10 and 450 pounds onto a tube through a winding machine and then manually hammering the wire into place. *Id.* ¶ 13.[2] The hammering is no small task; Perez estimates that he used a heavy hammer approximately 480 times to shape one transformer, and that he made between 7 and 10 transformers every day. *Id.* ¶ 14. The hand winder is also required to constantly pull the wire he is winding to prevent the transformer from unraveling; this task involves holding six copper wires together for up to half an hour at a time. *Id.* ¶ 15.

On June 23, 2009, Perez suffered an injury to his right hand while working as a hand winder. *Id.* ¶ 10. He was 60 years old at the time. *Id.* ¶ 11. Perez returned to work the same day, but with restrictions imposed by his physician. *Id.* ¶ 12. Perez could not lift more than five pounds with his right hand, and was warned against using his right hand to grip. *Id.* ¶ 12. Perez stated at his deposition that because of the restrictions, "practically, I couldn't do any winding at all anymore." *Id.* ¶ 16. When Perez presented the restrictions to his supervisor, Sergio Ortiz, Perez alleges that Ortiz looked at him "bad or ugly." *Id.* ¶ 48. TMI assigned Perez some minor

---

[2] More specifically, a hand winder has the following responsibilities: (1) installing the arbor on the winding machine; (2) placing a tube on the arbor to allow the wire to form the transformer; (3) moving a wire spool weighing between 10 and 450 pounds from the stock room to the winder's machine; (4) placing the spool on the machine with rollers; (5) threading the wire through the machine with rollers so that the wire was prepared to be placed onto the tube; (6) using a foot pedal to move the wire from the spool to the tube; (7) guiding wire from the spool onto the tube; (8) tightening the wire on the tube by pulling it during the winding process; (9) using a hammer to shape the transformer during the winding; (10) removing the transformer from the tube by using a hammer; (11) removing insulation from the wire to expose copper to allow a weld; (12) welding a "lead" on to the transformer; and (13) placing the transformer on a cart for transportation to the next job. *Id.* ¶ 13.

tasks during the first few days after he returned to work. *Id.* ¶ 18. Perez then left for vacation for four weeks between July 3 and August 3, 2009. *Id.* ¶¶ 20, 23.[3]

Over time, Perez's physicians adjusted the restrictions. On July 27, 2009, Perez was released to return to work subject to the restriction that he could not lift more than 20 pounds. Perez's 56.1 Resp. ¶¶ 17, 21. Perez further states that on September 1, 2009 he had a "maximum lift" restriction of 7.5 pounds for his right hand, but the treating physician also discharged him after concluding that his June 23 injury was resolved and that any continuing symptoms were unrelated to that injury. TMI's Facts ¶ 25; Perez's 56.1 Resp. ¶ 17.

TMI continued to pay Perez his full salary, even though he was no longer performing the duties of a hand winder. TMI's Facts ¶¶ 19, 23, 30. When Perez returned on August 3, 2009, he did not believe that he was capable of resuming his job as a hand winder and was still restricted to lifting no more than 20 pounds. *Id.* ¶¶ 21, 23; Perez's 56.1 Resp. ¶ 23; Perez Dep. at 56:8-10. Perez alleges that when he showed Ortiz the work restriction, Ortiz responded by telling him to go to the stockroom and that he might as well just "pull on it" while he was there. Perez Dep. at 57:5 – 58:13. For the next few weeks, Perez alleges, he asked Ortiz for work and Ortiz responded that his job was winding and that if he was too old or too injured, "the door is over there." TMI's Facts ¶ 49.

The day Perez returned from vacation, he filed a claim for workers' compensation benefits with the Illinois Workers' Compensation Commission. *Id.* ¶ 22. The Commission sent a notice of the filing to TMI two days later. *Id.* On September 24, 2009, TMI's workers' compensation carrier informed TMI that Perez's claim was denied based on the findings of a

---

[3] The deposition testimony of both Perez and Ortiz indicates that this vacation had nothing to do with his injury or inability to work but rather was previously scheduled. *See* Perez Dep. at 52:6-22; Ortiz Dep. at 51:14-15.

specialist that Perez's continuing symptoms were due to a chronic condition and not to a work injury. *Id.* ¶ 26.

Five days later, on September 29, 2009, Ortiz sent Perez home. Perez's 56.1 Resp. ¶ 27; TMI's Facts ¶ 27. At this point, Perez was still physically unable to perform the duties of a hand winder. Perez's 56.1 Resp. ¶ 29. Perez alleges that Ortiz—who was himself at least 61 years old at the time[4]—told him that he would no longer be permitted to work for TMI because he was "old," "useless," and "only getting in the way." First Am. Compl. (Dkt. 19) ¶ 9; Perez's 56.1 Resp. ¶ 27; Perez's Facts ¶ 50. Perez further alleges that Ortiz told him that he would no longer be permitted to work at TMI unless and until he was 100% recovered and had no restrictions, even if he brought in a note signed by the President of the United States. Perez's 56.1 Resp. ¶ 27. TMI counters that Ortiz informed Perez that he was sending Perez home because TMI had no more work for him, and that Perez could return if he had a doctor's note stating that he could perform his job. TMI's Facts ¶ 27. Ortiz testified that he was doing Perez a favor by paying him for doing no work because he believed Perez had been unable to work due to the injury he sustained in June, but sent Perez home on disability at the end of September when he learned that Perez's continuing restrictions were not related to the injury he had sustained at work. Ortiz Dep. at 51:16 – 54:10.

Perez filed a charge of discrimination with the Illinois Department of Human Rights on October 13, 2009, alleging that TMI terminated his employment on September 29, 2009, because of his age and disability. TMI's Facts ¶ 31. Meanwhile, TMI made short term disability payments to Perez from October 23, 2009 until January 15, 2010. *Id.* ¶ 32. On December 14, 2009, TMI sent Perez a letter stating, "If it looks as if you are going to succeed [sic] your 13

---

[4] TMI asserts that Ortiz was born on November 18, 1945, but Perez maintains that Ortiz told him that he was born in 1947. Perez's 56.1 Resp. ¶ 28.

weeks of short term disability, you might be able to qualify for long term disability." Perez's Facts ¶ 52. On January 25, 2010, TMI sent a letter to Perez notifying him that he was terminated effective that day. TMI's Facts ¶ 33. TMI asserts that it terminated Perez because Ortiz believed that Perez had an obligation to either return to work after receiving short term disability leave or provide a doctor's note stating that he remained disabled. *Id.* ¶ 34. Perez alleges that TMI terminated him due to his disability and age and in retaliation for filing a charge of discrimination and a claim for workers' compensation. First Am. Compl. ¶¶ 13-25. Perez admits that no one told him that TMI was terminating his employment because he filed a charge of discrimination; rather, he believes TMI fired him in retaliation "because I think so" and because it is "natural" that TMI would not appreciate an employee filing a discrimination charge. TMI's Facts ¶¶ 39-41; Perez Dep. at 103:16-17; 104:9-15.

From June 23, 2009 to the present, Perez has been physically unable to perform all of the duties of a hand winder. TMI's Facts ¶¶ 17, 21, 23, 29, 35; Perez's 56.1 Resp. ¶¶ 16, 17, 19, 21, 23, 29, 35, 37. On July 28, 2010, Perez's physician stated that Perez is permanently unable to lift more than 10 pounds or to use his right hand to grip, grasp, and pinch. TMI's Facts ¶ 37. Because of his injury, Perez has not looked for employment since September 29, 2009. *Id.* ¶¶ 45-46.

## II. ANALYSIS

Perez brings a seven-count amended complaint against TMI for: (1) failure to reasonably accommodate in violation of the ADA (Count I); (2) discharge on the basis of disability in violation of the ADA (Count II); (3) retaliation in violation of the ADA (Count III); discrimination in the terms and conditions of employment on the basis of age in violation of the ADEA (Count IV); discharge on the basis of age in violation of the ADEA (Count V); retaliation

in violation of the ADEA (Count VI); and retaliatory discharge under Illinois common law (Count VII) (Dkt. 19). TMI moves for summary judgment on all counts.

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See Jajeh v. Cnty. of Cook*, 678 F.3d 560, 566 (7th Cir. 2012) (citing Fed. R. Civ. P. 56(a)). In deciding TMI's motion for summary judgment, the Court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). If the moving party demonstrates the absence of a disputed issue of material fact, then "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Based on the undisputed facts set forth in the parties' submissions, TMI has shown that Perez cannot prevail on any of his claims; Perez has not met his burden to provide evidence of specific facts creating a genuine dispute as to TMI's liability. *See Carroll*, 698 F.3d at 564. Summary judgment is therefore granted on all counts.

### A. Perez's Disability Discrimination and Failure to Accommodate Claims (Counts I and II)

In Counts I and II, Perez alleges that TMI violated the ADA by failing to reasonably accommodate him following his surgery and by discharging him on the basis of his disability.

The ADA prohibits employers from discriminating against employees on the basis of disability. 42 U.S.C. § 12112(a). To succeed, a complaining plaintiff must show: (1) that he suffers from a disability as defined in the statute; (2) that he is qualified to perform the essential functions of the job in question, with or without reasonable accommodation; and (3) that he has suffered an adverse employment action as a result of his disability. *See Jackson v. City of Chicago,* 414 F.3d 806, 810 (7th Cir. 2005) (citation omitted). Discrimination under the ADA

also includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). In other words, the ADA "requires employers to reasonably accommodate the limitations of [their] disabled employees." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005).

To avoid summary judgment on these claims, Perez must demonstrate a genuine issue of material fact as to (1) whether he is disabled, (2) whether he can perform the essential functions of the position, and (3) whether he suffered an adverse employment action because of his disability. *See Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 622 (7th Cir. 2012) (citing *Nese v. Julian Nordic Const. Co.*, 405 F.3d 638, 641 (7th Cir. 2005)). As to (3), Perez bears the ultimate burden of persuasion to show but-for causation. *See Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603-04 (7th Cir. 2012).

**1. The parties do not dispute that Perez is disabled.**

For the purposes of TMI's motion only, TMI does not dispute that Perez is an individual with a disability. *See Cassimy v. Bd. of Educ. of the Rockford Pub. Sch., Dist. No. 205*, 461 F.3d 932, 935-36 (7th Cir. 2006) (the plaintiff must first prove that he has a disability); *see also* 42 U.S.C. 12102(1) (defining disability).

**2. No reasonable jury could conclude that Perez is a qualified individual with a disability.**

The parties dispute, however, whether Perez is a *qualified* individual with a disability under the ADA. 42 U.S.C. § 12112(b)(5)(A). The ADA defines a "qualified individual" as

> an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this

7

> subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential …

42 U.S.C. § 12111(8) ("Definitions"). The term "qualified" means that the individual

> satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position.

29 C.F.R. § 1630.2(m). In short, Perez must establish that he is able to perform the essential functions of the job, with or without reasonable accommodation. *See Povey*, 697 F.3d at 622; *Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 679 (7th Cir. 2010).

The parties agree that, since the time of his accident, Perez has not been able to perform at least some of the essential functions of the job of hand winder.[5] Perez concedes that from the date of his injury, until present, he has been "physically unable" to perform the essential functions of his TMI position. Perez's 56.1 Resp. ¶¶ 16, 29, 35. Perez also admits that as of June 23, 2009, "because of his work restrictions," "practically [he] couldn't do any winding at all anymore." *Id.* ¶ 16. In response to the question at his deposition, "Did you believe you could go back to your hand winder job after you came back from vacation," Perez responded, "No." Perez Dep. at 56:8-10. It is abundantly clear that Perez could not perform the essential functions of hand winding *without* a reasonable accommodation. *See Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 912 (7th Cir. 1996) (affirming summary judgment in favor of employer where employee admitted that he could not perform duties of roof bolter with physical restrictions required by

---

[5] Perez maintains that he could perform *some* of the duties of a hand winder, apparently supporting his argument with the fact that his weight restrictions were adjusted over time, but the argument only further confirms that he was unable to perform *all* of the essential duties of a hand winder.

doctor, and therefore employee was unable to perform the essential functions "of that job which he currently holds.").

Perez argues, however, that TMI was required to reassign him to a "light duty" position. Perez's Resp. (Dkt. 38) at 1, 4. An employer violates the ADA only if a terminated employee can show that reasonable accommodations exist that would have enabled the employee to perform the essential functions of the position he holds or desires. *See Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008) (citation omitted).

A reasonable accommodation may include reassignment to a vacant position under the ADA's statutory language. 42 U.S.C. § 12111(9)(B). An employer may be required, for example, to reassign a disabled employee to a vacant position if the employee no longer can perform the essential functions of his current position. *See Jackson,* 414 F.3d at 813 (quotation and citation omitted). But the employer is not required to "manufacture a job that will enable the disabled worker to work despite his disability." *Id.* (citation omitted); *Gratzl*, 601 F.3d at 680 ("An employer need not create a new job or strip a current job of its principal duties to accommodate a disabled employee.") (citation omitted). The employer "need only transfer the employee to a position for which the employee is otherwise qualified." *Jackson*, 414 F.3d at 813 (citation omitted).

The critical question for the viability of Perez's ADA discrimination claims, then, is whether there was another position at TMI to which Perez reasonably could have been reassigned. It is the plaintiff's burden to show that a vacant position exists for which he was qualified. *Jackson*, 414 F.3d at 813; *see also Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 750 (7th Cir. 2011) (holding same).

Perez has not met this burden. In response to TMI's stated fact that "[f]rom June 23, 2009 through January 25, 2010, there were no vacant positions at TMI which Plaintiff could have performed within his physical restrictions," Perez points to three former employees of TMI who, he asserts, were assigned to light duty jobs "for substantial periods of time despite their inability to perform their regular duties."[6] TMI's Facts ¶ 38; Perez's 56.1 Resp. ¶ 38; Perez's Resp. at 3-4. Although he identifies the jobs they performed ("working with small bobbins, testing, and cleaning wires and stamping small parts," Perez's 56.1 Resp. ¶ 47), he fails to provide any evidence at all regarding when these former employees worked for TMI, what the conditions of the company were when they were reassigned to light duty jobs, and whether those jobs were otherwise comparable in terms of salary, hours, responsibility, and similar factors.[7] Further, that TMI was able to place injured workers in vacant positions at some unknown time in the past says nothing about the availability of comparable vacant positions at the time of Perez's injury.[8] *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996) (whether plaintiff is a qualified individual is determined as of time of employment decision).[9] Perez's unsupported

---

[6] Perez asserts in his statement of additional facts that these employees were also younger than Perez. Perez's Facts ¶¶ 57-59.

[7] In this regard, it is worth noting that reassigning a disabled worker to a position that pays less or is otherwise materially less favorable could itself give rise to a claim of ADA discrimination. *See, e.g., Sanders v. City of Chicago*, No. 98 C 5838, 2000 WL 198901, at *6-7 (N.D. Ill. Feb. 15, 2000) (holding that reassignment to a different and less desirable unit was sufficiently plead to show adverse employment action and to survive motion to dismiss plaintiff's ADA and hostile working environment claims); *Snyder v. Livingston*, No. 11 C 77, 2012 WL 1493863, at *9-10 (N.D. Ill. Apr. 27, 2012) (holding that plaintiff offered sufficient evidence showing reassignment—that carried with it loss of status and opportunity—from which a reasonable jury could conclude that she suffered adverse employment action in ADA lawsuit).

[8] To the extent Perez's evidence has any relevance at all, it tends only to suggest that TMI's practice is to provide reasonable accommodations via reassignments when it is able to do so.

[9] According to TMI, all of these employees last worked at TMI before 2002, at least seven years before Perez's termination. TMI's 56.1 Resp. ¶¶ 57-59.

claim that TMI had, "at various times during Perez's employment," brought in day laborers to perform certain unskilled jobs suffers from the same shortcomings. Perez's 56.1 Resp. ¶¶ 38, 61. When did it do so? What jobs did they perform? Were those jobs comparable in terms of salary, hours, and other important terms of employment? Perez's submission provides no answers to such questions, so there is no basis on which to infer that TMI could have reasonably accommodated Perez's disability by reassigning him to one of these jobs in 2009. Ultimately, Perez acknowledged as much when he conceded in his deposition that he did not know whether there was "an actual job that was available that [TMI] could have given" to him. Perez Dep. at 100:15-21.

Two other points bear noting on this issue. First, Perez does not even allege, much less adduce evidence that would show, that he ever asked to be reassigned to another position at TMI, much less one that would have constituted a demotion. *See Hunt-Golliday v. Metro. Water Reclamation Dist.,* 104 F.3d 1004, 1012 (7th Cir. 1997) ("*After an employee's request,* both parties bear responsibility for determining what accommodation is necessary.") (emphasis in original); *see, e.g., Teninty v. Geren,* 776 F. Supp. 2d 725, 741 (N.D. Ill. 2011) (employer could not be deemed not to have reasonably accommodated disability where plaintiff failed to request accommodation). Relatedly, Perez has not worked at all, in any job, since his injury in 2009, and expressly concedes that he has not even looked for work due to his injury. Perez's 56.1 Resp. ¶¶ 45-46. Even if there were vacancies at TMI, Perez would have to establish that he was capable of performing the essential functions of those jobs, but he has provided no evidence about what his post-disability capabilities are. Given his acknowledgment that he has not worked at all since, and because of, his injury, there is no reason to overlook this void. So far as the record in this case indicates, Perez cannot perform the essential functions of *any* job at TMI (even if there were

openings). *See Cochrum*, 102 F.3d at 913 (finding employee was not a qualified individual in part because reassignment was not possible given employee's physical restrictions and absence of vacancies at employer).

Given that Perez concedes that he could not perform the essential functions of a hand winder and having adduced no evidence at all that there were jobs at TMI to which he could have been reassigned and which he could have competently filled, Perez has not established a genuine dispute as to whether he is a qualified individual with a disability. Summary judgment denying his ADA discrimination claims is therefore appropriate.[10]

### B. Perez's Age Discrimination Claims (Counts IV and V)

The Age Discrimination in Employment Act prohibits an employer from discriminating against an employee because of the employee's age. 29 U.S.C. § 623(a)(1). To establish a violation of the ADEA, the plaintiff must show that age "actually motivated the adverse employment action," *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010) (citation omitted), that is to say that "age must have played a role in the employer's decision-making process and had a determinative influence on the outcome." *Id.* (citation omitted). Perez's burden of proof at the summary judgment stage is to produce evidence that would permit a reasonable jury to infer that his age was the but-for cause of his termination. *See Fleishman*, 698 F.3d at 603-04 (stating current burden of proof for ADEA cases at summary judgment stage). That evidence can be presented with the direct or indirect method of proof. *Id.* at 603-04.

Perez claims that TMI discriminated against him because of his age by failing to provide him with a reasonable leave of absence sufficient to allow him to recover from his injury (Count

---

[10] Because summary judgment must be granted on this basis, the Court need not address whether Perez has raised a genuine dispute as to whether he suffered an adverse employment action. *Povey*, 697 F.3d at 624.

IV) and then terminating him (Count V). First Am. Compl. ¶¶ 27, 31. As to Count IV, the premise of the claim is apparently that, but for Perez's age, TMI would have given him a longer period to recuperate from his injury before terminating him. Beyond the fact that Perez has adduced no evidence that Perez's age entered into any decision-making process concerning the specific question of how long he would be permitted to remain on disability leave, Perez's claim in Count IV is doomed by his concession that he remains unable to perform the duties of a hand winder. Perez's 56.1 Resp. ¶ 35. Given that fact, it is plain that even if TMI had extended his leave of absence for several more *years*, Perez still would not have recovered sufficiently to resume his duties. That fact is also consistent with the undisputed conclusion of Perez's physician on July 28, 2010, who determined that Perez "permanently is unable to lift more than 10 pounds or to use his right hand to grip, grasp, and pinch." *Id.* ¶ 37. Thus, Perez has failed to establish that TMI's alleged age discrimination caused him any harm at all with respect to the length of the convalescent period the company provided prior to termination. This presents a "remedies problem" that forecloses his claim in Count IV. *See Barton v. Zimmer, Inc.*, 662 F.3d 448, 451, 454-55 (7th Cir. 2011) (affirming grant of summary judgment on ADEA claim where plaintiff had "no remedy because the discrimination did not cause any loss"). Perez has no remedy for TMI's alleged discrimination in this respect; he makes no claim that the company was required to pay him while on a leave of absence (indeed, he does not discuss this claim at all in his response brief) and, given his continuing inability to perform the duties of a hand winder, he is ineligible for reinstatement or compensation for any lost future earnings.[11]

---

[11] It is also questionable whether limiting the length of a leave of absence would constitute a materially adverse employment action, another element Perez is required to prove in order to prevail on Count IV. In the Seventh Circuit, an adverse employment action is defined as an action that is "materially" adverse, meaning "more than a mere inconvenience or an alteration of job responsibilities." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1115 (7th Cir. 2001)

As to Count V, the Court assumes that Perez is proceeding under the direct method of proof with circumstantial evidence to establish a discriminatory motive on the part of TMI. *See Van Antwerp*, 627 F.3d at 297-98. "Whatever circumstantial evidence is offered … must point directly to a discriminatory reason for the employer's action." *Id.* at 298 (citation and quotation marks omitted). Perez points to Ortiz's comments in August 2009 and on September 29, 2009, that he was "too old," and that the three other winders who had been reassigned to light duty jobs at some point in the past were younger, as circumstantial evidence supporting his claim of age discrimination. Perez's Resp. at 7-8. Perez adds that Ortiz's comment about being "too old" was suspiciously timed on September 29, 2009, the day that Perez believed he was terminated. *Id.* at 8. But Perez plainly was *not* terminated on September 29, as TMI paid him disability benefits for four months, until January 2010, and so there is little force to Perez's suspicions about the timing of Ortiz's remark. "[I]solated comments are not probative of discrimination unless they are contemporaneous with the discharge or causally related to the discharge decision-making process." *Fleishman*, 698 F.3d at 605 (citation and quotation marks omitted); *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 910-11 (7th Cir. 2002) (comments two months before termination were not contemporaneous). In any event, Perez has not adduced any evidence that Ortiz played any role in the decision to terminate him in January 2010.[12]

---

(citation omitted). Limiting the availability of leave may not rise to that level. *See, e.g., Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (an adverse employment action must significantly alter the terms and conditions of the job; the refusal to provide annual leave was not an adverse employment action) (citation omitted).

[12] Perez failed to adduce evidence as to who made the decision about his disability leave or termination. He identifies Joanne Hess, TMI's controller, as the individual in charge of TMI's ADEA and ADA compliance, Perez's 56.1 Resp. ¶ 62, and cites Ortiz's testimony that Ortiz told Hess that Perez should be taken off the payroll because he had quit, but does not establish that Ms. Hess made any decisions about the term of Perez's disability leave or termination or that, if she did, she even had knowledge of, much less shared, Ortiz's view that Perez was "too old." So far as the record reflects, Plaintiff did not depose Ms. Hess.

Perez has not shown that age "had a determinative influence," *Van Antwerp*, 627 F.3d at 297, on TMI's decision to terminate him, particularly in light of the overwhelming evidence that "reflects a clear, causally connected chain of events" arising from Perez's June 23, 2009 injury that led to his termination. *Fleishman,* 698 F.3d at 605. And indeed, even Ortiz's comment reflects that his concern was not Perez's age, but his inability to perform the duties of a hand winder. Perez alleges that Ortiz told him in the same conversation that he was "useless," "only getting in the way," and would no longer be permitted to work for TMI unless and until he was completely recovered from his injury. First Am. Compl. ¶ 9. The thrust of this conversation was about Perez's injury and his inability to work; this is especially true given Ortiz's comment that Perez could return to work if he was recovered (and not if he got any younger). Moreover, as Perez himself observes, Ortiz testified that he told Perez he could return to work if he was able to do the job and that he thought Perez had quit when he failed to report back to Ortiz for weeks after his 13 week disability leave ended. Perez's 56.1 Resp. ¶ 61; Ortiz Dep. at 56:11-22]. On the basis of the evidence Perez has adduced, no reasonable jury could conclude that he was terminated because of his age rather than his disability; accordingly, Perez has failed to establish that age was the but-for cause of Perez's termination. *Fleishman*, 698 F.3d at 604.

### C. Perez's ADA and ADEA Retaliation Claims (Counts III and VI)

Perez claims that TMI retaliated against him by, after he filed a charge of discrimination, failing to discuss reasonable accommodations with Perez (ADA), failing to provide him with a sufficient leave of absence (ADEA), and then discharging him. First Am. Compl. ¶ 23.

The ADA prohibits an employer from retaliating against an employee who asserts his rights under the ADA to be free from discrimination. 42 U.S.C. § 12203(a) ("Prohibition against retaliation and coercion"). TMI is "forbidden from retaliating against" Perez "regardless of

whether the initial claims of discrimination are meritless." *Povey*, 697 F.3d at 624 (citing *Dickerson v. Bd. of Trust. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 602 (7th Cir. 2011)). The ADEA similarly makes it unlawful for an employer to discriminate against an employee who has made a charge of age discrimination. 29 U.S.C. § 623(d).

To prove retaliation in violation of the ADA or the ADEA, Perez must show that he engaged in a statutorily protected activity, that he suffered a materially adverse action, and that the two are causally related. *See Barton*, 662 F.3d at 455 (citation omitted) (ADEA); *Dickerson*, 657 F.3d at 601 (ADA). As for causation under the ADEA, retaliation must be a but-for cause of a materially adverse action, not merely a contributing factor. *See Barton*, 662 F3d at 455-56 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

Perez can use either the direct or indirect method of proof to establish retaliation. *Id*. Although Perez does not identify which method he is using, the Court assumes it is the direct method since Perez does not allege, as required by the indirect method, that similarly situated employees were not subject to the same adverse action as him. Under the direct method, Perez can offer either direct evidence of intentional discrimination or a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the decision-maker." *Teruggi v. CIT Group/Capital Finance, Inc.*, 709 F.3d 654, 659 (7th Cir. 2013).

The first two categories (statutorily protected activity and adverse employment action) are not at issue. The parties do not dispute that Perez filed a charge of discrimination with the Illinois Human Rights Commission, a statutorily protected activity, on October 13, 2009. TMI's Facts ¶ 31; Perez's 56.1 Resp. ¶ 31. The parties also do not dispute that Perez was terminated by TMI. TMI's Facts ¶ 33; Perez's 56.1 Resp. ¶ 43.

The only question is whether there is a sufficient causal connection between the filing of Perez's charge of discrimination on October 13, 2009 and his termination. *See Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 644 (7th Cir. 2013) (to survive summary judgment, the plaintiff must provide enough direct or circumstantial evidence to allow a jury to conclude that he suffered an adverse employment action *because of* his statutorily protected activity).

To the extent that Perez maintains that TMI terminated him on September 29, 2009 (*see* ¶ 43), that concession is fatal to a retaliation claim since he did not lodge his discrimination charge until two weeks later. As to the January 25, 2010 termination, Perez asserts that he was fired in retaliation for filing the charge of discrimination three months earlier. He stated at his deposition that he believed this was the reason for his termination "because I think so" and because it was "natural" that TMI would not appreciate an employee raising such a claim. TMI's Facts ¶¶ 40, 41; Perez's 56.1 Resp. ¶¶ 40, 41. Perez admits that no one at TMI told him that he was terminated because he had filed a charge of discrimination. Perez's 56.1 Resp. ¶ 39. Yet he argues that comments by his supervisor, Sergio Ortiz—that he was "useless," "too old," "only getting in the way," and that he could not return to work at TMI unless he was 100% recovered with no restrictions—also support his claim of retaliation. Perez's Resp. at 8.

This Court finds that, reviewing Perez's circumstantial evidence as a whole, Perez has not shown that there is a causal connection between the filing of his discrimination charge and his termination. *See Hobgood*, 731 F.3d at 644 ("evidence that would be insufficient standing alone can be sufficient" together with other facts to defeat summary judgment). The three months between Perez filing the discrimination charge and his termination does not, by itself, create a genuine issue of material fact to support a retaliation claim. *See Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 449, 511 (7th Cir. 1998) (the termination must have occurred "fairly soon

after the employee's protected expression") (citation omitted); *Povey*, 697 F.3d at 624 (termination three weeks after complaint is insufficient on its own to create genuine issue of material fact for retaliation claim); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) ("The mere fact that one event preceded another does nothing to prove that the first event caused the second … Rather, other circumstances must also be present which reasonably suggest that the two events are somehow related to one another.").

Ortiz's comments, on their own or in combination with their timing, are also not enough to show a causal connection between the discrimination charge Perez filed and his later termination. The comments do not refer, even obliquely, to the discrimination charge or any other complaint by Perez about his treatment. Further, Ortiz's comments were isolated and do not show, directly or by inference, that TMI was motivated by retaliation for Perez's discrimination filing. "[I]solated comments that are no more than stray remarks in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus," unless the remark was made by the decision-maker and around the time of and in reference to the adverse employment action. *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006). Perez has not provided evidence to demonstrate that Ortiz made these comments during or near his January 25, 2010 termination or that the comments were in reference to his termination.

In sum, Perez has not shown a nexus between his termination and his protected activity. *See Povey*, 697 F.3d at 624-25 (holding that there was no evidence to suggest that certain remarks motivated the decision to terminate the complaining employee). Accordingly, TMI is entitled to summary judgment on Perez's ADA and ADEA retaliation claims (Counts III and VI).

### D. Perez's Retaliatory Discharge Claim Under Illinois Common Law (Count VII)

Perez's final claim is that TMI terminated him in retaliation for filing a claim for workers' compensation benefits. First Am. Compl. ¶ 39-42. Under Illinois law, it is unlawful to terminate an employee in retaliation for exercising his rights under the Illinois Workers' Compensation Act, 820 ILCS 305/4(h). *See Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 773 (7th Cir. 2012) (citation omitted). To prevail, Perez must show: (1) that he was employed by TMI before the injury; (2) that he exercised a right granted under the Illinois Workers' Compensation Act; and (3) that the discharge was causally related to the filing of the workers' compensation claim. *See id.* at 773 (reciting Illinois test and stating that *McDonnell-Douglas* framework is not applied in retaliatory discharge cases in Illinois); *see also Clemons v. Mech. Devices Co.*, 184 Ill.2d 328, 335-36 (1998) (stating Illinois test). As for causation, "the ultimate issue to be decided is the employer's motive in discharging the employee." *Clemons*, 184 Ill.2d at 336. The plaintiff must "affirmatively show that the discharge was primarily in retaliation for [his] exercise of a protected right." *Gordon*, 674 F.3d at 774 (citation omitted). If Perez can meet this burden, then TMI is required to provide a legitimate reason for its decision to terminate him. *Id.*

Perez has not met this burden. He alleges that TMI "wrongfully discharged [him] in retaliation for his having filed a claim for workers compensation and in violation of this clearly mandated public policy of the State of Illinois." First Am. Compl. ¶ 41. Beyond that conclusion, however, Perez offers no evidence to demonstrate that TMI was improperly motivated and discharged Perez "primarily" (or at all) in retaliation for his workers' compensation claim. *Gordon*, 674 F.3d at 774. Piecing together some of the relevant facts in this case, it is undisputed that Perez filed a claim for workers' compensation benefits on August 3, 2009, and that TMI was aware of the filing by August 5, 2009. Perez's 56.1 Resp. ¶ 22. It is also undisputed that TMI's

19

workers' compensation carrier informed TMI on September 24, 2009 that Perez's claim was denied based on a physician's findings that Perez's continuing symptoms were due to a chronic condition and not a work injury. *Id.* ¶ 26. In sum, TMI was aware that Perez filed a claim, that the claim was denied, and that Perez was unable to perform the duties of a "hand winder." There is simply no basis to connect Perez's discharge four months later to his act of filing the unsuccessful worker's compensation claim. Even if Perez were terminated on September 29, 2009, as he believes, temporal proximity alone is generally not enough to create a genuine issue of material fact. *Gordon*, 674 F.3d at 775 (citing *Silverman v. Bd. of Educ. of Chicago*, 637 F.3d 729, 736 (7th Cir. 2011)). As Perez puts forth no evidence whatsoever for the Court to rely on in finding a causal link between his termination and his workers' compensation claim, the Court grants TMI's motion for summary judgment as to Count VII.

\*    \*    \*

For the reasons set forth above, TMI's Motion for Summary Judgment is granted as to all counts and this case is terminated.

Entered: March 24, 2014

John J. Tharp, Jr.
United States District Judge